Erik James O'DONNELL, Plaintiff,

v.

Paul Arthur BRODEHL, and City of Chaska, Defendants,

CITY OF CHASKA, Third–Party Plaintiff,

v.

JONATHAN DEVELOPMENT CORPO-RATION, et al., Third–Party Defendants,

WESTFIELD INSURANCE COMPANIES, intervenor, Appellant,

v.

Erik James O'DONNELL, Defendant,

Paul Arthur Brodehl, Respondent.

No. C5–88–1808.

Court of Appeals of Minnesota.

Jan. 24, 1989.
Review Denied March 30, 1989.

Jerome A. Ritter, Jerome A. Ritter & Assoc., St. Paul, for Erik James O'Donnell, plaintiff.

Mark J. Condon, Rae L. Randolph, Chadwick, Johnson & Condon, Minneapolis, for Paul Arthur Brodehl, and City of Chaska, defendants.

Carol A. Kubic, Pustorino, Pederson, Tilton & Parrington, Minneapolis, for City of Chaska, third-party plaintiff.

Gary Thompson, Minnetonka, for Jonathan Development Corp., et al., third-party defendants.

Daniel J. Roth, Lundquist & Roth, P.A., Minneapolis, for Westfield Ins. Companies, intervenor, appellant.

Heard, considered and decided by SCHUMACHER, P.J., and PARKER and SHORT, JJ.

## OPINION

PARKER, Judge.

Westfield Insurance Companies (Westfield) appeals from a judgment, entered pursuant to Minn.R.Civ.P. 54.02, allowing the dismissal of its subrogation claim against the tortfeasor, respondent Arthur Brodehl. We reverse.

## FACTS

The accident in this case occurred on September 4, 1985, in which the insured, Erik O'Donnell, sustained injuries when he was struck by a car driven by the tortfeasor, respondent Paul Brodehl. The parties do not dispute that the damages sustained by O'Donnell will exceed the $100,000 liability limits of Brodehl's liability insurance policy. O'Donnell had $25,000 in underinsurance coverage with Westfield Insurance Companies. Anticipating that O'Donnell's damages would exceed the $100,000 liability limits, in June 1986 Westfield paid $25,000 in underinsurance benefits to O'Donnell. At Westfield's request, and in exchange for the underinsurance payment, O'Donnell executed an agreement assigning to Westfield all of his potential claims arising from the accident.

After receiving the underinsurance benefits, O'Donnell commenced an action against Brodehl and the City of Chaska, alleging that his injuries were the result of Brodehl's negligence. Brodehl and O'Donnell reached a tentative settlement whereby Brodehl's liability carrier would pay O'Donnell $90,000 of the $100,000 limit of his insurance policy. In return for this payment, Brodehl would be released from any and all further liability arising out of this accident. Neither of the respondents claim that Brodehl and his attorney did not have notice of the underinsurance payment and release between Westfield and O'Donnell before the start of the settlement discussions between O'Donnell and Brodehl. In addition, Westfield's attorney sent formal written notice to Brodehl's attorney on March 25, 1988, stating that under *Schmidt*, Westfield's subrogation rights against Brodehl were protected from any potential settlements and releases agreed to between the tortfeasor and the insured.

When O'Donnell and Brodehl sought court approval of their settlement agreement, Westfield moved to intervene in the proceeding. The trial court permitted the

intervention, but applied what it considered to be the rule of *Schmidt v. Clothier* and required Westfield to substitute its check for the full amount of Brodehl's settlement payment to O'Donnell in order to protect its subrogation rights. The insurance company refused, claiming that its payment of underinsurance benefits prior to settlement discussions between the tortfeasor and the insured protected its subrogation rights against the tortfeasor. Judgment was entered against Westfield on July 8, 1988, dismissing its subrogation claim against Brodehl.

## DISCUSSION

■ As a preliminary matter, we note respondent O'Donnell's claim that this appeal should have been taken from the trial court order entered on May 20, 1988, and should have been filed within 30 days of its entry. On July 7, 1988, the trial court ordered, pursuant to Minn.R.Civ.P. 54.02, that there was no just reason for delay of entry of the judgment and ordered judgment entered. Westfield filed its appeal from the judgment entered on July 8, 1988, within 90 days thereof; it correctly brought its appeal from that judgment.

The central issue of this appeal involves the trial court's application of *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn.1983), to the undisputed facts of this case. An appellate court need not give deference to a trial court's decision on a legal issue. *Frost–Benco Electric Association v. Minnesota Public Utilities Commission*, 358 N.W.2d 639, 642 (Minn.1984).

In *Schmidt v. Clothier* the Minnesota Supreme Court dealt with questions of underinsurance coverage, settlement, and subrogation rights. The basic rule of *Schmidt* on subrogation was stated as follows:

Subrogation is a limited, not absolute, right that comes into existence only after the insurer has paid benefits to its insured, a fact recognized in the statutory language. * * * Once an insurer has paid the benefits it contractually owes to its insured and gives notice thereof to the tortfeasor, a subsequent release obtained by the tortfeasor will not defeat the subrogation right but rather will be viewed as a waiver of the rule against splitting the cause of action. * * * If the tortfeasor is released before payment by the insurer, however, no subrogation rights ever arise.

*Id.* at 261–62.

The supreme court also stated that when a tortfeasor and the insured enter into settlement discussions and when the underinsurer may ultimately pay some underinsurance benefits and thereby obtain a subrogation right, an underinsurer could substitute its payment to the insured in an amount equal to the tentative settlement in order to protect its subrogation rights to the extent of the payment. *Id.* at 263. The supreme court then reiterated its policy favoring prompt payment by the underinsurer of underinsurance benefits to the insured. The court stated that

prompt assessment, arbitration, and payment of underinsurance claims will protect the underinsurer's subrogation rights, and the underinsurer will avoid having to choose later between either acquiescing in the settlement or substituting its check for the amount of the settlement offer.

*Id.*

■ We hold that the order and judgment entered against Westfield dismissing its subrogation claim against Brodehl is contrary to the clear language of *Schmidt v. Clothier*. An insurance company need not substitute its check for the settlement amount to protect its subrogation rights if it has paid underinsured motorist benefits to its insured *before* settlement with the specific purpose of protecting those subrogation rights. The Minnesota Supreme Court in *Schmidt* specifically stated that it encourages the prompt payment of underinsurance benefits. Westfield paid its underinsurance obligation promptly, and its subrogation rights against the tortfeasor should be protected. Thus, the trial court erred as a matter of law.

Brodehl cites the case of *Milbank Mutual Insurance Co. v. Kluver*, 302 Minn. 310, 225 N.W.2d 230 (1974), to argue that there

are no subrogation rights when the insured has not been fully compensated. But, *Kluver* is not controlling, because Westfield is attempting here to protect its subrogation rights against the underinsured tortfeasor rather than subrogation rights against the insured as in *Kluver.* Thus, the rules cited above from *Schmidt* are dispositive.

## DECISION

The judgment of July 8, 1988, which dismissed Westfield's subrogation claims against Brodehl is reversed and ordered vacated; Westfield's subrogation rights are ordered reinstated.

REVERSED.