The **PRINCIPAL FINANCIAL GROUP**, Appellant,

v.

**ALLSTATE INSURANCE COMPANY**, Respondent.

No. C1–90–2583.

Court of Appeals of Minnesota.

June 18, 1991.

Kay Nord Hunt, Ehrich L. Koch, Lommen, Nelson, Cole & Stageberg, Minneapolis, for appellant.

Robert E. Salmon, Meagher & Geer, Minneapolis, for respondent.

Considered and decided by PARKER, P.J., and NORTON and DAVIES, JJ.

## OPINION

NORTON, Judge.

This is an appeal from a judgment confirming an intercompany arbitration award. The arbitrators determined that respondent (Allstate) had a right of subrogation against appellant (Principal) for basic economic loss benefits it had paid. Principal moved the trial court for an order vacating the arbitration award, arguing that the arbitrators had exceeded their powers by deciding an issue of Minnesota no-fault law. Initially, the trial court agreed with Principal and ordered the award vacated. Then, Allstate moved the trial court to reconsider its order vacating the arbitration award. Noting that initially it had made a crossmotion for the court to confirm the award, Allstate again requested that the court confirm the award by determining whether or not the arbitrators had answered the question of Minnesota law correctly. Subsequently, the trial court ordered its previous order vacating the arbitration award vacated. Later, the trial court ordered the award confirmed because the arbitrators had correctly answered the question of Minnesota law. Principal appeals from the trial court's judgment confirming the arbitration award. We reverse.

## FACTS

Allstate's insured was injured in an automobile accident in Chicago, Illinois on November 25, 1985. The car Allstate's insured was riding in was driven by Principal's insured. The other car involved in the accident was driven by an uninsured motorist. Both insureds were residents of Minnesota and both were insured under a Minnesota automobile policy. Allstate paid its insured in excess of $31,000 in basic economic loss benefits. After paying the benefits, Allstate notified Principal that it would seek subrogation. Subsequent to the notification, Allstate's insured released Principal and its insured from all claims arising from the accident in return for $95,-000 in underinsured motorist benefits provided by Principal. The agreement also included the following language:

> This release of all claims is not intended to affect * * * any * * * no-fault PIP benefits under her contract of insurance [with] her * * * insurance company Allstate, but preserves to her the balance of any and all such coverage remaining available to her under her contract of insurance with Allstate.

Allstate initiated an intercompany arbitration to determine its subrogation rights. Allstate alleged that its insured had not been negligent and that Allstate was entitled to subrogation under Minn.Stat. § 65B.53, subd. 2 because its insured had losses caused by the negligence of a person in an accident in another state. The arbitrator determined that Principal's insured was 60% negligent, that the uninsured driver of the other vehicle was 40% negligent and that Allstate was entitled to subrogation benefits in the amount of $18,000.

## ISSUE

Did the trial court err by ruling that Allstate was entitled to subrogation from Principal for basic economic loss benefits?

## ANALYSIS

The scope of this review includes the trial court's order of November 6, 1990 ruling that the arbitrators' decision was based on a correct interpretation of Minnesota law. Questions of law are reviewed *de novo. Castor v. City of Minneapolis,* 429 N.W.2d 244, 245 (Minn.1988).

Initially, the parties disagree on the trial court's jurisdiction to answer this question of no-fault law. The court explained that instead of vacating the arbitrators' award, dismissing the case and requiring Allstate to bring another action to have the legal question answered; it would decide the question of law.

Minn.Stat. § 572.18 (1988) says:

Upon application of a party, the court shall confirm an award, unless within the time limits hereinafter imposed grounds are urged for vacating or modifying or correcting the award, in which case the court shall proceed as provided in sections 572.19 and 572.20.

Minn.Stat. § 572.19 (1988) says:

Subdivision 1. Upon application of a party, the court shall vacate an [arbitrator's] award where:

\* \* \* \* \* \*

(3) The arbitrators exceeded their powers.

Principal argues that the court's jurisdiction to review an arbitrator's award is limited by sections 572.18 and 572.19 and that those sections do not allow the trial court to first decide an issue of Minnesota no-fault law and then confirm the award because the arbitrators correctly applied the law.

The supreme court distinguished arbitration decisions in the no-fault context from those in other contexts saying:

[I]n the area of automobile reparation, arbitrators are limited to deciding issues of fact, leaving the interpretation of the law to the courts.

*Johnson v. American Family Mut. Ins. Co.,* 426 N.W.2d 419, 421 (Minn.1988). Before a court can confirm or vacate an arbitrator's decision, it must determine whether the arbitrator had authority to act. *See Safeco Ins. Co. v. Goldenberg,* 435 N.W.2d 616, 620 (Minn.App.1989) ("if \* \* \* the arbitrators decide a coverage issue, the trial court may and should review the coverage issue if raised by post-award motion"), *pet. for rev. denied* (Minn. Apr. 19, 1989). The trial court needed to first decide the underlying issue, in this case a right of subrogation, before it could vacate or confirm the arbitrators' subrogation award. The court had jurisdiction to decide this issue.

The applicable provision of the no-fault act says:

A reparation obligor paying or obligated to pay basic or optional economic loss benefits is subrogated to the claim for the recovery of damages for economic loss that the person to whom the basic or optional economic loss benefits were paid or payable has against another person whose negligence in another state was the direct and proximate cause of the injury for which the basic economic loss benefits were paid or payable. This right of subrogation exists only to the extent that basic economic loss benefits are paid or payable and only to the extent that recovery on the claim absent subrogation would produce a duplication of benefits or reimbursement of the same loss.

Minn.Stat. § 65B.53, subd. 2 (1988). The trial court ruled that the plain language of the statute permitted subrogation where the negligence occurred in another state.

As a threshold issue, the parties disagree on when Allstate's subrogation right accrues. Principal argues that the right of subrogation only arises when an insured receives a double recovery. Further, Principal argues that because Allstate made no showing of double recovery and because the settlement and release precluded double recovery, Allstate had no subrogation right. Allstate appears to argue that it had a right of subrogation as a result of the tort and that this right could not be extinguished by the settlement and release.

Allstate relies on *Liberty Mut. Ins. v. American Family Mut. Ins.,* 463 N.W.2d 750 (Minn.1990) and other cases

applying an insurer's subrogation right in the un/underinsured context. However, subrogation rights in the un/underinsured context are based on common law principles and are not specifically addressed in the no-fault statutes. *See Schmidt v. Clothier*, 338 N.W.2d 256, 262 (Minn.1983) (subrogation rights depend on equitable principles and the insurance contract); *see also Preferred Risk Mut. Ins. v. Pagel*, 439 N.W.2d 755, 757 (Minn.App.1989) (even though no-fault act does not expressly provide for it, courts have recognized uninsurers' subrogation right), *pet. for rev. denied* (Minn. July 12, 1989). In that context, the right of subrogation arises by virtue of the tort, and is "important * * * to the effective functioning of a fault-based compensation system." *Milbrandt v. American Legion Post of Mora*, 372 N.W.2d 702, 705 (Minn.1985) (quoting Note, *Subrogation and Indemnity Rights Under the Minnesota No-Fault Automobile Insurance Act,* 4 Wm. Mitchell L.Rev. 119, 125 (1978)). The same equitable concerns for the insurer do not apply in the no-fault context of basic economic loss benefits.

> Since the no-fault insurer assesses premiums to pay for injury to its insured regardless of fault, the insurer is paying out only what its insured paid for, and thus would receive a windfall if allowed to recover from the tortfeasor basic economic loss benefits paid the insured. * * * The legislature accommodated the fault and no-fault systems by subordinating the no-fault insurer's subrogation right to its obligation to pay basic economic loss benefits.

*Id.* at 705–06.

Principal relies on *Milbrandt. Milbrandt* was decided under section 65B.53, subd. 3 (1984) that says:

> Subd. 3. A reparation obligor paying or obligated to pay basic economic loss benefits is subrogated to a claim based on an intentional tort, strict or statutory liability, or negligence other than negligence in the maintenance, use, or operation of a motor vehicle. This right of subrogation exists only to the extent that basic economic loss benefits are paid or payable and only to the extent that re-

covery on the claim absent subrogation would produce a duplication of benefits or reimbursement of the same loss.

The supreme court held that the right of subrogation only applied in the case of double recovery and could only be asserted against the insured.

> Although subdivision 3 indicates that the legislature intended reparation obligors to recover from tortfeasors basic economic loss benefits paid to insureds, the legislature clearly limited this right to cases where insureds recover duplicate benefits from tortfeasors. Appellant asks the court to find a general policy in the No-Fault Act favoring subrogation claims against tortfeasors by reading the first sentence of subdivision 3 broadly, and then seeks a narrow interpretation of the explicit limitation on subrogation rights in the second sentence of subdivision 3. The statute, however, means exactly what it says: a reparation obligor may assert a subrogation claim to recover basic economic loss benefits paid only when the insured has received a double recovery.

*Milbrandt,* 372 N.W.2d at 705 (footnote omitted). The court continued:

> The right of the insurer against the insured arises only in the event of a double recovery by the latter, not by reason of the tort. We refer to the right of recovery as a subrogation right, however, because that is what the statute terms it. It is of course not true subrogation.

*Id.* at 705 n. 2.

█ Allstate attempts to distinguish *Milbrandt* because it was decided under subdivision 3. However, the supreme court rejected that distinction saying:

> The right of subrogation provided by subdivisions 2 and 3 exists only to the extent that the recipient of basic economic loss benefits would otherwise receive a double recovery.

*American Family Mut. Ins. Co. v. Vanman,* 453 N.W.2d 48, 50 (Minn.1990). Further, Allstate has no separate common law subrogation rights such as those recog-

nized in the uninsured/underinsured context. *See Milbrandt,* 372 N.W.2d at 705. As a result:

> Application of *Milbrandt* to all subrogation claims arising under section 65B.53, subdivisions 2 and 3, means that the insured has full control over the litigation and settlement of the kinds of tort claims that are covered in those subdivisions. No reimbursement right arises if the settlement or judgment does not result in duplicate recovery of losses for which basic economic loss benefits have been paid.

2 M. Steenson, *Minnesota No-Fault Automobile Insurance* 295–96 (2d. ed. 1989). This should allow the insured "the latitude to structure a settlement so that it includes only losses for which no basic economic loss benefits have been paid." *Id.* at 296 n. 136. This appears to be what Allstate's insured has done.

■ We hold that the trial court erred in ruling that Allstate could seek subrogation from Principal. Allstate argues that the purpose of subrogation is to shift losses initially paid by the injured person's insurer to a party who is a noncontributor to the no-fault system in Minnesota. Allowing subrogation in this case might serve the loss-shifting purpose, but would not prevent double recovery. If Allstate's insured had received a double recovery, subrogation would shift the loss from Allstate to Principal, but Allstate's insured would still retain any double recovery it received. Further, this result was clearly rejected in *Milbrandt.*

The appellant in *Milbrandt* argued that Minn.Stat. § 65B.53, subd. 3:

> "evidences an intent on the part of the legislature that out-of-system tort-feasors be required to put back into the no-fault system benefits occasioned by their negligence." * * * Appellant therefore seeks to assert a subrogation claim directly against [the tort-feasor] to recover the sum it paid its insured as a consequence of [the tort-feasor's actions].

*Milbrandt,* 372 N.W.2d at 704. However, the court rejected this argument and held that:

> Because the insurer's right to recover benefits paid its insured exists only when the insured obtains double recovery, the right of recovery recognized in subdivision 3 may be asserted *only against the insured.*

*Id.* at 705 (emphasis added). Further, the court went on to reject the argument that an additional common law subrogation right should be recognized to prevent a tortfeasor from escaping liability for its actions and forcing "the no-fault system to compensate the victims of out-of-system tortfeasors." *Id.* The court held:

> that section 65B.53, subd. 3, provides the exclusive subrogation remedy available to a reparation obligor that pays or is obligated to pay basic economic loss benefits. Recognition of a separate common law subrogation right would upset the balance struck by the No-Fault Act between fault-based and no-fault systems for the compensation of accident victims.

*Id.*

*Milbrandt* controls and states that a subrogation right under section 65B.53 exists only where there is double recovery and can only be asserted against the insured.

## DECISION

The trial court erred by confirming the arbitrators' award. Allstate had no subrogation right against Principal, and the arbitrators exceeded their authority by finding one under these circumstances. We reverse and instruct the court to vacate the arbitration award.

Reversed.

DAVIES, Judge (concurring specially).

I concur, but only under the compulsion of *Milbrandt v. American Legion Post of Mora,* 372 N.W.2d 702 (Minn.1985), and its progeny.[1] I view those cases as inconsist-

---

1. *See, e.g., American Family Mut. Ins. Co. v. Vanman,* 453 N.W.2d 48, 49–50 (Minn.1990); *Mohs v. Parrish's Bar,* 418 N.W.2d 494, 496–97 (Minn.1988); *Gruman v. Hendrickson,* 416 N.W.2d 497, 500–01 (Minn.App.1987); *Peters v. B.P. & E., Inc.,* 397 N.W.2d 449, 451 (Minn.App.

ent with the fundamental thrust of Minnesota subrogation law. Because *Milbrandt* is supreme court authority, however, it must be followed.

## I.

Under the no-fault statute:

> A reparation obligor paying or obligated to pay basic or optional economic loss benefits is *subrogated to the claim* for the recovery of damages for economic loss *that the person* to whom the basic or optional economic loss benefits were paid or payable *has against another person* whose negligence in another state was the direct and proximate cause of the injury for which the basic economic loss benefits were paid or payable. This right of subrogation exists only to the extent that basic economic loss benefits are paid or payable and only to the extent that recovery on the claim absent subrogation would produce a duplication of benefits or reimbursement of the same loss.

Minn.Stat. § 65B.53, subd. 2 (1984) (emphasis added). Similarly:

> A reparation obligor paying or obligated to pay basic economic loss benefits is *subrogated to a claim* based on an intentional tort, strict or statutory liability, or negligence other than negligence in the maintenance, use, or operation of a motor vehicle. This right of subrogation exists only to the extent that basic economic loss benefits are paid or payable and only to the extent that recovery on the claim absent subrogation would produce a duplication of benefits or reimbursement of the same loss.

Minn.Stat. § 65B.53, subd. 3 (1984) (emphasis added). The emphasized language in the statute makes clear, contrary to *Mil-*

*brandt,* that a right of subrogation is given to the reparation obligor directly; that is, the insurer has a right to be subrogated to the victim's *claim against* the tortfeasor, not to the victim's *recovery from* the tortfeasor. The subrogation right, however, is limited in amount and the statute's next sentence serves to define that limitation:

> This [insurer's] right of subrogation [against the tortfeasor] exists only to the extent that basic economic loss benefits are paid or payable and only to the extent that recovery on the claim absent subrogation would produce a duplication of benefits or reimbursement of the same loss.

Minn.Stat. § 65B.53, subds. 2 & 3.

Understandably, but also unfortunately, *Milbrandt* read this sentence to limit the right of subrogation itself, not just the amount. Interpreting this language, *Milbrandt* stated:

> The statute * * * means exactly what it says: a reparation obligor may assert a subrogation claim to recover basic economic loss benefits paid only when the insured has received a double recovery. Because the insurer's right to recover benefits paid its insured exists only when the insured obtains double recovery, *the right of recovery recognized in subdivision 3 may be asserted only against the insured.* When seeking to recover under subdivision 3, the burden is on the insurer to show that the insured has been overcompensated.[2]

*Milbrandt,* 372 N.W.2d at 705 (footnotes omitted) (emphasis added).

I believe *Milbrandt* misconstrues the Minnesota no-fault statute, and to the extent of that misconstruction, should be abandoned.[3] The problem with reading the

---

1986); *Miller v. Astleford Equip. Co.,* 378 N.W.2d 820, 821–22 (Minn.App.1985), *pet. for rev. denied* (Minn. Feb. 14, 1986).

**2.** The *Milbrandt* holding that subrogation lies only "against the insured" conflicts with the language of the statute in a significant way not developed in this concurrence. Note the statutory words "paid *or payable.*" If subrogation lay only against the insured, and after duplicate recovery, the words "or payable" have no mean-

ing. This is a misreading because "[t]he legislature intends the entire statute to be effective." Minn.Stat. § 645.17(2) (1990).

**3.** I also note, alternatively, that on its facts *Milbrandt* applies only to circumstances where the tort recovery is not large enough to give a right of subrogation. Therefore, the holding of *Milbrandt* can be limited on its facts to cases where there never was a right to subrogation because the tort claim was too small ever to create a

final sentence of section 65B.53, subdivisions 2 and 3, as a limitation on the right of subrogation, rather than on the amount of subrogation, is that it sets up a conflict between insured and insurer. Specifically, the insured is permitted to "sell out" its insurer's right of subrogation, even though doing so violates the obligation of loyalty owed by the insured to its insurer. *See Schmidt v. Clothier*, 338 N.W.2d 256, 261–63 (Minn.1983); *Miller v. Shugart*, 316 N.W.2d 729, 734 (Minn.1982). Indeed, *Milbrandt*, as applied in this case, permits the victim and a third-party tortfeasor to strike a deal that deprives the victim's insurer of its right to subrogation for payment of basic no-fault benefits. The *Milbrandt* reading of the statute gives rise to serious mischief in the relationship of insureds and insurers by inviting acts by insureds that violate their good faith obligation to their insurers. Arguably, in the future, a settlement like the one here should give the insurer a claim against its own insured for disloyalty.

## II.

I believe *Milbrandt's* reading of the subrogation statute also overlooked the possibilities of using *Naig* settlements in the no-fault context. *See Naig v. Bloomington Sanitation*, 258 N.W.2d 891 (Minn.1977). One of the policies enacted in the no-fault statute was to avoid forcing no-fault recipients into litigation:

> No reparation obligor shall include in its contract any provision which would require a person to commence a negligence action as a condition precedent to the payment of basic economic loss benefits or which permits the reparation obligor to determine whether such an action will be commenced. No reparation obligor shall contract for a right of reimbursement or subrogation greater than or in addition to those permitted by this chapter.

Minn.Stat. § 65B.53, subd. 6 (1984). Because a *Naig* settlement permits a tort claim to be divided into two parts, the insured's own claim and the insurer's subrogation claim, the insured's claim under *Naig* can be limited to that which is not duplicative of no-fault benefits, while the insurer's claim can be limited to that part of the tort claim which is duplicative of no-fault benefits. Thus, consistent with the statute, *Naig* permits the insured to control the tort action to the extent of his or her interest, and permits the insurer to press a suit in its own interest. Because *Naig* postdated the 1974 passage of the no-fault act, the legislature was unaware, at enactment, of soon-to-come developments that would validate splitting causes of action. Had *Naig* come earlier, the above provision (section 65B.53, subdivision 6) might well have provided explicitly for the accommodation of the interests of both insured and insurer that *Naig* allows and which I suggest for this case.

## III.

Finally, I believe a good argument can be made that the supreme court implicitly overruled *Milbrandt* (at least it substantially rejected its rationale) in *Liberty Mut. Ins. Co. v. American Family Mut. Ins. Co.*, 463 N.W.2d 750 (Minn.1990), involving auto insurance, and in *Folstad v. Eder*, 467 N.W.2d 608 (Minn.1991), involving workers compensation. In those two recent cases, the supreme court makes clear that its policy is to protect the right of an insurance company to subrogation for benefits paid under first-party insurance.[4]

In *Liberty Mutual* the injured plaintiff obtained a jury verdict of $215,154 against a tortfeasor with $100,000 of liability coverage. 463 N.W.2d at 752. Apparently, the judgment was fully collectible, however, either because a bad faith claim existed against the liability insurer or because the insured had assets independent of insurance. The tortfeasor's insurer, American

---

duplicate recovery. *Milbrandt*, so read, is not inconsistent with the result I suggest.

**4.** The legislature, for independent reasons, has barred subrogation against liquor vendors re-

sulting from "subrogation clauses of the uninsured, underinsured, collision, or other first party coverages of a motor vehicle insurance policy." Minn.Stat. § 340A.801, subd. 4 (1990).

Family, understandably paid the $100,000 liability coverage obligation and, surprisingly, paid an additional $130,000 to the plaintiff. *Id.* In exchange for the $130,000, American Family received from the plaintiff a full release of the tortfeasor and a loan receipt indicating that the plaintiff would repay American Family the $130,000 only out of uninsured or underinsured benefits received from his insurer, Liberty Mutual. *Id.* at 756. Liberty Mutual responded that the full release of the tortfeasor terminated its obligation to provide uninsured/underinsured coverage. *Id.* at 753. The supreme court agreed that since an attempt had been made to destroy the insurer's subrogation rights,

> [t]o the extent that Liberty Mutual's subrogation interest has been compromised, [its insured's] uninsured/underinsured motorist coverage claim must fail. * * * In other words, it is for the trial court to determine the extent to which the satisfaction of the judgment against [the tortfeasor] has prejudiced Liberty Mutual's ability to secure reimbursement of sums for which it is obligated pursuant to its uninsured/underinsured motorist coverage.

*Id.* at 757. The court continued:

> Although Liberty Mutual's subrogation claim would have had to yield to [its insured's] right to full compensation, Liberty Mutual would have been subrogated to the unsatisfied balance of the judgment.

*Id.* at 758.

More recently, the supreme court expressed a similar commitment to subrogation in *Folstad.* There the supreme court laid out how the competing claims of the injured worker and the workers compensation carrier may be determined. 467 N.W.2d at 611. The court said either claimant may proceed without the other, or their claims may be prosecuted together. *See id.* Neither claim may be settled, however, in a way that defeats the other claimant. *See id.* The specific holding in the *Folstad* case was that the employer's workers compensation carrier was free to settle its subrogation claim with the third-party

tortfeasor prior to trial and, when the carrier has done so, the employee may pursue the remaining tort claim alone, independent of the now-satisfied right to subrogation. *Id.* at 612. The court said of employee and carrier rights:

> [In this situation] the employee waives her right to the "one-third" outright share she would otherwise receive under the [statutory] formula. Likewise, when the compensation carrier independently settles its subrogation claim, it waives any rights it might have to the employee's subsequent recovery, specifically, the right to claim a portion of the employee's recovery as a credit against future compensation payable.

*Id.* The court continued:

> In other words, when either the employee or the compensation carrier settles their own claim, the employee's third party tort action has been effectively separated into one claim for damages recoverable under workers' compensation and another claim for those damages not recoverable under workers' compensation.

*Id.*

In the instant case, however, the tort victim's settlement with the tortfeasor destroys his insurer's right to subrogation. The tortfeasor's insurer is allowed to approach the injured person with a proposal that the tort claim be released for an amount that excludes any sum for a subrogation reimbursement of the victim's insurer. This is allowed here, with little protest from the majority, even though the victim's insurer had paid substantial no-fault benefits to its insured. This settlement deprived the victim's insurer of the opportunity to demonstrate that the tort claim had sufficient value to duplicate some of the no-fault benefits.

*Milbrandt* forces this result on us even though the victim's insurer here had given the tortfeasor's insurer notice of its intent to claim subrogation.

To permit this destruction of subrogation rights is inconsistent, not just with *Liberty Mutual* and *Folstad,* but with another long line of Minnesota Supreme Court cases including *Schmidt v. Clothier,* 338 N.W.2d

256, 261–63 (Minn.1983), and its progeny. *See, e.g., American Family Mut. Ins. Co. v. Baumann,* 459 N.W.2d 923, 925 (Minn. 1990); *O'Donnell v. Brodehl,* 435 N.W.2d 68, 70 (Minn.App.1989), *pet. for rev. denied* (Minn. Mar. 30, 1989); *Traver v. Farm Bureau Mut. Ins. Co.,* 418 N.W.2d 727, 730–31 (Minn.App.1988), *pet. for rev. denied* (Minn. Apr. 15, 1988).

I submit that the destruction of subrogation rights we see here should be avoided. I suggest a subrogation policy, based on *Naig* settlements, that would treat no-fault subrogation like all other insurer subrogations. In order to make the state's subrogation policy internally consistent within the no-fault context, and also consistent across the various other insurance contexts, *Milbrandt's* anomalous misconstruction of the no-fault act should be set aside.