Allen **STARRY** and Sonja Starry,
**Plaintiffs and Appellees,**

and

**Great West Casualty Company,
Intervenor and Appellant,**

v.

**CENTRAL DAKOTA PRINTING, INC.,
a North Dakota Corporation,
Defendant.**

**Civ. No. 940305.**

Supreme Court of North Dakota.

April 13, 1995.

**324**

Daniel T. Carlisle, Wadena, MN, and Paul J. Bowlinger, Bismarck, for plaintiffs and appellees.

Thomas O. Smith, Zuger, Kirmis & Smith, Bismarck, and Michael Barrett, Cousineau, McGuire & Anderson, Minneapolis, MN, for intervenor and appellant.

SANDSTROM, Justice.

Great West Casualty Company (Great West) appeals from a judgment dismissing its subrogation claim against Allen and Sonja Starry for $28,058.39 in no-fault benefits it paid to Allen Starry. We conclude the trial court correctly ruled Minnesota no-fault subrogation law applied and there was no genuine issue of material fact about whether the Starrys would receive a double recovery if subrogation were denied. We therefore affirm.

I

Allen Starry, a truck driver based out of Osakis, Minnesota, was seriously injured in July 1990 while unloading a truckload of paper rolls he had delivered to Central Dakota Printing, Inc.'s (Central Dakota) premises in Wishek, North Dakota. Great West, Star-ry's no-fault vehicle insurer, paid him $20,000 in medical loss benefits and $8,059.39 in wage loss benefits. Starry, a Minnesota resident, purchased the Great West no-fault policy in Minnesota, and his truck was registered and principally garaged in Minnesota.

The Starrys brought a tort action against Central Dakota, which was insured by Farmers Union Mutual Insurance Company under a comprehensive general liability policy covering the premises. They sought damages for Allen Starry's personal injuries and Sonja Starry's loss of consortium. As stipulated by the parties, Great West was allowed to intervene "to protect its rights of subrogation and reimbursement." The Starrys negotiated a settlement with Central Dakota for an unallocated lump sum of $120,000. As a result of the settlement and release agreement disposing of the Starrys' tort claims against Central Dakota, $91,941.61 was paid to the Starrys and $28,058.39, the amount of Great West's claimed subrogation interest, was deposited with the court pending the outcome of Great West's subrogation claim.

Great West asserted North Dakota subrogation law applied and it was entitled to recover the no-fault benefits it had paid to Starry under N.D.C.C. § 26.1–41–16. N.D.C.C. § 26.1–41–16 provides:

*"Insurer's right of subrogation.* A basic no-fault insurer which has paid or may become obligated to pay basic no-fault benefits under this chapter is subrogated to the extent of its obligations to all of the rights of the injured person against any person other than a secured person. The subrogee has a lien to the extent of its obligations, and no release of rights is effective against the rights without the subrogee's consent."

The Starrys concede Great West is entitled to subrogation if this statute applies to the subrogation dispute. Great West also contended it was entitled to subrogation under Minnesota law because the parties, by agreeing to deposit the precise amount of Great West's subrogation claim in court, had shown the Starrys would receive a double recovery under Minn.Stat.Ann. § 65B.53, Subd. 2 if its

subrogation claim were denied. Minn.Stat. Ann. § 65B.53, Subd. 2 provides:

"A reparation obligor paying or obligated to pay basic or optional economic loss benefits is subrogated to the claim for the recovery of damages for economic loss that the person to whom the basic or optional economic loss benefits were paid or payable has against another person whose negligence in another state was the direct and proximate cause of the injury for which the basic economic loss benefits were paid or payable. This right of subrogation exists only to the extent that basic economic loss benefits are paid or payable and only to the extent that recovery on the claim absent subrogation would produce a duplication of benefits or reimbursement of the same loss."

The trial court ruled Minnesota subrogation law applied and, on cross-motions for summary judgment, further ruled there was no genuine issue of material fact to suggest the Starrys would receive a double recovery if subrogation were denied under the Minnesota statute.

The judgment was entered awarding the Starrys the $28,058.39 deposited with the court, plus interest and costs.

The trial court had jurisdiction under Art. VI, §§ 1 and 8, N.D. Const., and N.D.C.C. § 27–05–06. This Court has jurisdiction under Art. VI, §§ 1 and 2, N.D. Const., and N.D.C.C. § 28–27–01. Great West's appeal was timely under N.D.R.App.P. 4(a).

## II

▉ Both parties rely on *American Family Mut. v. Farmers Ins.*, 504 N.W.2d 307 (N.D.1993), to support their choice-of-law arguments about whether North Dakota or Minnesota no-fault subrogation law should apply under the circumstances.

In *American Family*, a North Dakota no-fault insured motorist collided with a Minnesota no-fault insured motorist in Minnesota. The insurer of the North Dakota driver paid him no-fault benefits for his injuries and sued the insurer of the Minnesota driver, seeking a declaratory judgment that it was entitled to subrogation under the North Dakota no-fault equitable allocation statute, N.D.C.C. § 26.1–41–17.

We found usual application of the significant-contacts test analyzed in *Vigen Construction Co. v. Millers National Insurance Co.*, 436 N.W.2d 254 (N.D.1989), and *Apollo Sprinkler Co. v. Fire Sprinkler Suppliers & Design, Inc.*, 382 N.W.2d 386 (N.D.1986), to be of little help in resolving the choice-of-law question. *Vigen* and *Apollo*, we said, "stand for the proposition that the law of the jurisdiction having the most significant contacts with an insurance policy and with the parties to the policy will govern actions *on the policy*." *American Family* at 308 (emphasis in original). Because *American Family* did not involve a first-party action by the no-fault insurer of the North Dakota resident against its insured on the policy, but involved a third-party statutory action for subrogation between two no-fault insurers, those normally determinative significant contacts with ·the jurisdiction did not control "which state's law governs this statutory subrogation action against an out-of-state insurer which is a stranger to the North Dakota contract." *American Family* at 308. In essence, because two no-fault policies issued in different states were involved, and all of the contacts cited by one insurer could be raised "in mirror-image fashion" by the other insurer, those factors "balance[d] out," and we were required to "look to factors beyond the policies themselves to determine which state's law governs." *American Family* at 309.

We found "one overridingly significant" factor, "the law of the jurisdiction whose 'interests are more deeply affected by the issues raised,'" which mandated application of Minnesota no-fault law over North Dakota no-fault law. *American Family* at 309 (quoting *Vigen* at 258). We noted the strong territorial nature of the no-fault laws in both states, each of which required no-fault coverage when a vehicle is operated within the state. We ruled:

"The statutory schemes of North Dakota and Minnesota, as well as the Uniform [Motor Vehicle Accident Reparations] Act, demonstrate a singular concern with coverage for accidents occurring within the boundaries of that state. Each provides

for mandatory coverage when an out-of-state vehicle is driven within the state. The legislatures of North Dakota and Minnesota have recognized that benefits under the Minnesota statute are available when a North Dakota insured is injured in a Minnesota accident. Minnesota no-fault law should apply to determine the availability of subrogation when Minnesota no-fault law governs the benefits available to the insured and Minnesota tort law governs the underlying action. We conclude that Minnesota has the more significant contacts with the issue of statutory subrogation for no-fault benefits under the facts in this case."

*American Family* at 310–311 (footnote omitted).

Great West asserts under the *American Family* rationale North Dakota has a deeper interest in applying its no-fault subrogation law in this case because the accident occurred in North Dakota.

Under these circumstances, the usually controlling jurisdictional contacts do not "balance out" as they did in *American Family*. *American Family* involved a N.D.C.C. § 26.1–41–17 subrogation dispute between two no-fault vehicle insurance obligors, and we stressed the strong territorial nature of statutorily-mandated no-fault insurance coverage. Likewise, *National Indemn. Co. v. Federal Ins. Co.*, 180 Ga.App. 743, 350 S.E.2d 278 (1986), also relied on by Great West, involved a subrogation dispute between two no-fault vehicle insurers. Here, Great West is the only no-fault insurer involved in this dispute. Central Dakota did not satisfy its settlement obligation to the Starrys through a statutorily-mandated no-fault vehicle insurance policy, but through a comprehensive general liability insurance policy covering its premises. There is no legislative mandate, as there is with no-fault vehicle insurance, requiring Central Dakota's comprehensive general liability coverage. Even though the North Dakota no-fault act allows, through N.D.C.C. § 26.1–41–16, a no-fault vehicle insurer subrogation from a non-motorist tortfeasor for no-fault benefits it has paid its insured, the principles underlying the territorial choice-of-law approach applied in *Ameri-*

*can Family* are seriously eroded when only one no-fault insurer is involved in the subrogation dispute.

Unlike *American Family*, this case is not postured as an action between two insurance companies. This case reaches us as a direct confrontation between Great West, an insurer, and Starry, its insured under a no-fault vehicle insurance policy written, negotiated, paid for, and delivered in Minnesota. Starry is a Minnesota resident. The vehicle was registered in, and principally garaged in Minnesota. The policy said: "We will pay, in accordance with the Minnesota no-fault automobile insurance act, personal injury protection benefits...." Only the accident, triggering application of the no-fault benefits under the Great West policy, occurred in North Dakota.

We conclude Minnesota, rather than North Dakota, has the most substantial interest in regulating the no-fault subrogation rights of a Minnesota no-fault insured and its insurer where the only no-fault insured involved in the case is a Minnesota resident who has purchased the insurance in Minnesota under the requirements of the Minnesota no-fault insurance act. *See generally Vigen* at 258; *Apollo* at 391. Because Minnesota's interests are more deeply affected by the issues raised in this statutory no-fault subrogation dispute, we conclude the trial court correctly ruled Minnesota no-fault law governs.

### III

Great West asserts it is entitled to subrogation under Minnesota no-fault law. The trial court rejected this argument.

■ Under Minn.Stat.Ann. § 65B.53, Subd. 2, a right of subrogation exists only to the extent basic economic loss benefits are paid or payable and "only to the extent that recovery on the claim absent subrogation would produce a duplication of benefits or reimbursement of the same loss." Even before the quoted language was added to the statute in 1976, the Minnesota Supreme Court had ruled a no-fault insurer is not subrogated under the statute to the proceeds in a settlement made by its insured with a third-party tortfeasor, where the insured has

not been fully compensated for his or her injury. *See Langenberger v. Dahl,* 329 N.W.2d 69, 72 (Minn.1983); *Pfeffer v. State Auto. and Cas. Underwriters,* 292 N.W.2d 743, 749 (Minn.1980). Thus, Minnesota statutory subrogation "exists only to the extent that the recipient of basic economic loss benefits would otherwise receive a double recovery." *American Family Mut. Ins. Co. v. Vanman,* 453 N.W.2d 48, 50 (Minn.1990). The burden is on the insurer to show the insured has been overcompensated because the settlement duplicates no-fault benefits already paid. *See Milbrandt v. American Legion Post of Mora,* 372 N.W.2d 702, 705 (Minn.1985).

■ The Starrys moved for summary judgment on the double recovery issue, asserting there was no genuine issue of material fact because the undisputed evidence showed they were not fully compensated for their injuries. They presented evidence Allen Starry received a total of $154,105.42 through the settlement, Great West no-fault benefits, and other health insurance payments. His medical expenses and past and future income losses totaled $182,271.03. The Starrys argue, even without considering compensation for pain, suffering, disability, and Sonja Starry's claim for loss of consortium, this undisputed evidence shows Allen Starry alone fell short, by at least $28,165.61, of being fully compensated for his injuries and that a double recovery would not result by denying subrogation.

Great West did not offer any evidence relating to Allen Starry's damages, and contends no outside evidence is necessary to resolve the issue, because the settlement agreement and the deposit with the court of the exact amount of no-fault benefits paid to Starry is a recognition that a denial of subrogation "would produce a duplication of benefits and reimbursement of Starry for the same loss." Great West cites no Minnesota case law to directly support this assertion, and we have found none.

We do not attach the same significance to the funds deposited with the court. It is clear from the record the deposit was made to facilitate disposition of the main lawsuit and the parties were fully aware the amount deposited was subject to this pending litigation. A paragraph in the settlement and release agreement, which was signed by a Great West representative, specifically states:

> "Starrys contend that the total recovery of damages obtained in this settlement is substantially less than the actual loss sustained by Starrys in the accident involved. Starrys further contend that a right of subrogation on the part of Great West is not necessary to prevent a duplication of benefits or reimbursement of the same loss and that Great West does not have any right of subrogation to any part of the fund deposited in court under Minnesota or North Dakota law."

This belies Great West's argument the deposit of the money with the court was intended to show Starry had received, through the settlement, compensation for basic economic loss benefits Great West had already paid.

The settlement and release agreement here does not allocate the settlement amount between various categories of damage claims. Minnesota courts have recognized the no-fault subrogation provision allows "the insured 'the latitude to structure a settlement so that it includes only losses for which no basic economic loss benefits have been paid.'" *Principal Financial Group v. Allstate,* 472 N.W.2d 338, 342 (Minn.Ct.App. 1991) (quoting 2 M. Steenson, *Minnesota No-Fault Automobile Insurance,* p. 296 n. 136 (2d ed. 1989)). *See also Miller v. Astleford Equipment Co., Inc.,* 378 N.W.2d 820, 821 (Minn.Ct.App.1985) (no subrogation allowed where stipulated settlement said it "intended that [the Millers] receive no duplication of benefits or reimbursement for the same loss for which basic economic loss benefits were paid"). *Compare Meyer v. N.D. Workers Comp. Bureau,* 512 N.W.2d 680, 683 (N.D.1994) ("injured workers cannot shield settlement amounts from the bureau's right of subrogation by arbitrarily allocating amounts to the employee's spouse"). The Minnesota Supreme Court has specifically noted the difficulty faced by an insurer seeking subrogation under Minnesota no-fault law in the case of a settlement:

"[I]n the context of settlement, especially in the absence of specified payment in the settlement of basic economic loss items, it will be difficult for the insurer to prove that its insured has received double recovery. The statute, however, requires the insurer to prove that its insured has received double recovery as a prerequisite to the insurer's right to recover for basic economic loss benefits paid."

*Milbrandt* at 706.

A party resisting a motion for summary judgment may not simply rely on the pleadings or on unsupported, conclusory allegations, but must present competent admissible evidence which raises an issue of material fact. *Kummer v. City of Fargo,* 516 N.W.2d 294, 297 (N.D.1994). Here, Great West presented no specific evidence of double recovery, such as expert testimony on the value of the Starrys' case or expert medical testimony about the injuries suffered. *See Mueller v. Theis,* 512 N.W.2d 907, 911–912 (Minn.Ct. App.1994) (no-fault insurer's desire to "play with the numbers" was insufficient to create fact question on duplication of benefits through settlement). We conclude, based on Minnesota law, the trial court correctly ruled no genuine issue of material fact existed on Great West's subrogation claim.

### IV

We have considered the other arguments raised and they do not affect our decision. The judgment is affirmed.

VANDE WALLE, C.J., and NEUMANN, LEVINE and MESCHKE, JJ., concur.