**NODAK MUTUAL INSURANCE COMPANY, Respondent,**

v.

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Appellant.**

**No. C3–98–1792.**

Court of Appeals of Minnesota.

April 6, 1999.

William P. Harrie, Nilles, Hansen & Davies, Ltd., Fargo, for respondent.

Paul R. Aamodt, Fargo, for appellant.

Considered and decided by SCHUMACHER, Presiding Judge, DAVIES, Judge, and WILLIS, Judge.

## OPINION

DAVIES, Judge.

On appeal from summary judgment for Nodak Mutual Insurance Company (Nodak), American Family Insurance Company (American Family) challenges the district court's determination that Minnesota law governs a subrogation dispute arising from an accident in North Dakota. We reverse.

## FACTS

In November 1993, the automobiles of David Blumer, a North Dakota resident, and Gracey Morey, a Minnesota resident, collided in North Dakota, near the Minnesota border. Blumer's car was registered and licensed in North Dakota and insured by Nodak under a policy issued in North Dakota, while Morey's car was registered and licensed in Minnesota and insured by American Family under a policy issued in Minnesota. Pursuant to that "Minnesota" automobile insurance policy (and Minnesota law), American Family paid $6,201.64 in no-fault benefits for injuries that Morey sustained in the accident.

American Family subsequently asserted a subrogation claim requesting reimbursement from Nodak for the no-fault benefits it had paid Morey. In response, Nodak brought this action seeking a declaration that Minnesota law governed American Family's claim for subrogation against Nodak, and that American Family was, under Minnesota law, precluded from recovering from Nodak. The district court granted Nodak's motion for summary judgment, concluding that Minnesota law applied and that American Family was, therefore, not entitled to assert a right of subrogation against Nodak. This appeal followed.

## ISSUE

Did the district court err in determining that Minnesota law governs a no-fault insurer's subrogation claim against an automobile liability insurer when the collision occurred in North Dakota and all other facts are bal-

anced equally between Minnesota and North Dakota?

## ANALYSIS

On appeal from summary judgment, the reviewing court asks whether genuine issues of material fact exist and whether the trial court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2,4 (Minn.1990). A reviewing court is not bound by the district court's conclusions of law. *Wille v. Farm Bureau Mut. Ins. Co.,* 432 N.W.2d 784, 785 (Minn.App.1988).

### I. Is a Choice of Law Necessary?

■ Before applying a choice-of-law analysis, a court must first determine whether there is an actual conflict between the legal rules of the two states. *Jepson v. General Cas. Co.,* 513 N.W.2d 467, 469 (Minn. 1994). An actual conflict exists if choosing the rule of one state or the other is "outcome determinative." *Myers v. Government Employees Ins. Co.,* 302 Minn. 359, 363, 225 N.W.2d 238, 241 (Minn.1974).

North Dakota law permits a no-fault insurer to assert a fault-based claim against an automobile liability insurer to recover benefits the no-fault insurer has paid its insured.[1] Minnesota law also allows subrogation by a no-fault carrier, but "only to the extent that recovery on the claim absent subrogation would produce a duplication of benefits or reimbursement of the same loss." Minn. Stat. § 65B.53, subd. 2 (1998). Thus, under Minnesota law, if a tort settlement or judgment does not result in a duplicate recovery, no right of reimbursement arises. An insured may even structure a settlement so that it includes only losses for which no basic economic loss benefits have been paid, thus

precluding subrogation. *See Principal Fin. Group v. Allstate Ins. Co.,* 472 N.W.2d 338, 342 (Minn.App.1991) (allowing such a settlement structure).[2]

It is undisputed that Minnesota subrogation rules preclude the claim by American Family against Nodak, while North Dakota law allows such a claim; the choice of law is, thus, "outcome determinative." Because an actual conflict exists, choice-of-law analysis is necessary to decide which state's rules on subrogation should govern.

### II. Constitutional Limits

■ As part of our analysis, we must consider whether the rule of each state may be constitutionally applied. *Jepson,* 513 N.W.2d at 469.

[F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair.

*Allstate Ins. Co. v. Hague,* 449 U.S. 302, 312–13, 101 S.Ct. 633, 640, 66 L.Ed.2d 521 (1981). In this case, Nodak Mutual is a North Dakota insurer, its insured (Blumer) is a North Dakota resident, Blumer's car was registered and licensed in North Dakota, the Nodak policy was issued in North Dakota, and the accident happened in North Dakota. American Family's insured (Morey) is a Minnesota resident, Morey's car was registered and licensed in Minnesota, the American Family policy was issued in Minnesota, and American Family paid Morey no-fault benefits under Minnesota law. Both states have signifi-

---

1. The relevant North Dakota statute reads:

   A basic no-fault insurer may recover no-fault benefits paid to or for the benefit of an injured person from the motor vehicle liability insurer of a secured person if:
   1. The injured person has sustained a serious injury; * * *
   The right of recovery and the amount thereof must be determined on the basis of tort law without regard to section 26.14–41–08 by agreement between the insurers involved, or, if they fail to agree, by binding intercompany arbitration under procedures approved by the commissioner. The amount of recovery

   under this section may not exceed the limits of liability of the secured person's motor vehicle liability insurance policy or other security, reduced by the amount of the liability for tort claims against the secured person covered by the policy or other security.
   N.D. Cent.Code § 26.1–41–17 (1995).

2. No one claims that a tort settlement between Morey and Blumer was designed to preclude a subsequent subrogation claim or that they contemplated a choice ever being made between rules derived from Minnesota or North Dakota law.

cant contacts, making application of either state's law constitutional.

## III. Choice–Influencing Factors

■ The next step in choice-of-law analysis is to consider certain choice-influencing factors. These factors help reveal the reasons for choosing one state's law over another. *Jepson*, 513 N.W.2d at 470. The factors are: (1) predictability of result; (2) maintenance of interstate and international order; (3) simplification of the judicial task; and (4) advancement of the forum's governmental interest. *Id.* (citing *Milkovich v. Saari*, 295 Minn. 155, 161, 203 N.W.2d 408, 412 (1973)).[3]

### A. Predictability of Results

■ The first factor, predictability of results, primarily embodies the ideal that litigation arising from a given set of facts should be decided the same regardless of where the litigation occurs, so that neither party will benefit from "forum shopping." Robert A. Leflar, *Choice–Influencing Considerations in Conflicts Law*, 41 N.Y.U.L.Rev. 267, 282–83 (1966).

In addition, predictability is valuable in analyzing contract cases because it preserves the parties' justified contractual expectations by enhancing certainty as to which state's

law will govern a dispute arising out of the parties' agreement. *Jepson*, 513 N.W.2d at 470. But, although in this case the no-fault benefits were paid under contract, this is not an action on the insurance policy. Rather, this is a statutory action for subrogation between two insurers. The interests of neither insured is affected. Predictability, therefore, favors neither state's law in this case, except to the extent choice of law properly represents disciplined decision-making. *Jepson*, 513 N.W.2d at 470 (noting factors not intended to spawn mechanical rules but to prompt court to carefully and critically consider each new fact situation and forthrightly explain its choice of law).

### B. Interstate Order

The primary consideration in maintenance of the interstate order is to assure the free and unpenalized interstate movement of people and goods necessary to the success of the federal system. Robert A. Leflar, *American Conflicts Law* § 104, at 208 (3rd ed.1977). This requires deference to a sister state's legal rules when that sister state has a substantial concern with the problem, even when the forum state also has an identifiable interest. *Id.* If a transaction's more significant

---

**3.** A fifth factor, application of the better rule of law, was identified in *Milkovich* and has been routinely listed since then. Many years have passed, however, since the Minnesota Supreme Court actually relied on the better-law factor. *Compare Bigelow v. Halloran*, 313 N.W.2d 10, 12–13 (Minn.1981) (forum's interest in ensuring tort victim was fully compensated led to choice of Iowa's law permitting tort action to survive death of tortfeasor rather than Minnesota Statute foreclosing recovery), *and Hague v. Allstate Ins. Co.*, 289 N.W.2d 43, 49 (Minn.1978) (concluding that Minnesota law favoring stacking was better rule, thus mandating application of Minnesota law), *aff'd*, 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981), *with Jepson*, 513 N.W.2d at 473 (refusing to find either stacking or antistacking was better law in deciding to apply North Dakota law), *and Hime v. State Farm Fire & Cas. Co.*, 284 N.W.2d 829, 834 (Minn.1979) (stating that, because first four factors weighed in favor of applying Minnesota law, court did not "dwell on" better-law factor).

This court, likewise, has in this decade rarely relied on the better-law factor. *See, e.g., Reed v. University of N.D.*, 543 N.W.2d 106, 109 (Minn. App.1996) (noting that Minnesota had better law,

but applying North Dakota law because better-law factor applied only when other four factors not dispositive), *review denied* (Minn. Mar. 28, 1996); *Richie v. Paramount Pictures Corp.*, 532 N.W.2d 235, 242 (Minn.App.1995) (stating better-law factor unnecessary when other factors resolve choice of law), *rev'd on other grounds*, 544 N.W.2d 21 (Minn.1996); *Lommen v. City of E. Grand Forks*, 522 N.W.2d 148, 152 (Minn.App. 1994) (stating factor irrelevant because neither law was better, they simply differed), *review granted* (Minn. Dec. 2, 1994), *vacated and appeal dismissed* (Minn. Aug. 9, 1995); *DeRemer v. Pacific Intermountain Express Co:*, 353 N.W.2d 694, 698 (Minn.App.1984) (stating that factual contacts with forum and state policy considerations made consideration of better law unnecessary).

I concede that a few older cases of this court applied the "better law" factor. *See Gimmestad v. Gimmestad*, 451 N.W.2d 662, 666 (Minn.App. 1990) (choosing, as better rule, Minnesota's "add on" method of calculating underinsured motorist benefits over Texas's "difference in limits" method); *Wille*, 432 N.W.2d at 786 (Minn.App.1988) (applying, as better law, Minnesota's "stacking" rule). But since these older cases, the better-law factor seems to have been abandoned, except for lip service.

contacts are with the sister state, yet the forum applies its own law, interstate friction will develop. *Id.*

Deference to the state that is primarily concerned involves examining the contacts between the transaction and the states. *Id.* In this case, although each state has significant contacts, the North Dakota Supreme Court has, in a case nearly the mirror image of this case, discussed the "singular concern" each state holds for motor vehicle accidents occurring within its borders. *See American Family Mut. Ins. Co. v. Farmers Ins. Exch.,* 504 N.W.2d 307, 310 (N.D.1993) (stating that, in statutory no-fault schemes of North Dakota and Minnesota, each demonstrates "singular concern" with coverage for accidents occurring within its boundaries). Because we agree with this observation by the North Dakota Supreme Court, we find that, on these facts, this factor favors North Dakota law.

## C. Simplification of the Judicial Task

Simplification of the judicial task is relevant mainly for procedural issues. If a procedural rule is implicated, it may be better to apply the forum rule. *American Conflicts, supra,* § 105, at 209. But here, the conflict is over substantive law and a Minnesota court is wholly capable of choosing and applying the relevant North Dakota rule of substantive law.

## D. Interest of the Forum

The concept of states' "governmental interests" as a basis for choice of law was Professor Brainerd Currie's great contribution to modern conflicts analysis. *American Conflicts, supra,* § 1, at 2. Currie, who was dissatisfied with the traditional conflicts rules that inappropriately and randomly nullified states' interests, advocated the following approach to help courts reach a rational and just result in each case:

2. When it is suggested that the law of a foreign state, rather than the law of the forum, should furnish the rule of decision, the court should first of all determine the governmental policy—perhaps it is helpful to say the social, economic, or administrative policy—that is expressed by the law of the forum. The court should then inquire whether the relationship of the forum state to the case at bar—that is, to the parties, to the transaction, to the subject matter, to the litigation—is such as to bring the case within the scope of the state's governmental concern, and to provide a legitimate basis for the assertion that the state has an interest in the application of its policy in this instance.

3. If necessary, the court should similarly determine the policy expressed in the proffered foreign law, and whether the foreign state has a legitimate interest in the application of that policy to the case at bar.

\* \* \*

When one of two states related to a case has a legitimate interest in the application of its law and policy and the other has none, \* \* \* clearly the law of the interested state should be applied.

Brainerd Currie, *The Constitution and the Choice of Law: Governmental Interests and the Judicial Function, in Selected Essays on the Conflict of Laws* 188, 189 (1963).

Professor Leflar followed Currie in recognizing that a forum has a natural concern with advancement of the governmental interests of its own state. *American Conflicts, supra,* § 106, at 210. A governmental interest is discerned by comparing the reasons supporting the legal rules of the forum and the other state and the factual contacts with the case, or the issue in a case. *Id.* The legislature intends each legal rule to affect certain relationships; the intended impact on those relationships represents the "governmental interest" of the enacting legislature. A conflict analysis should, therefore, focus on the legal relationship that is the target of the rule. *See* Restatement (Second) of Conflict of Laws §§ 145, 188 (1971) (in tort and contract cases of conflicts court must look to relationship underlying claim).

The relationship at issue in this case is between the two insurance companies. That relationship arose with the accident, in North Dakota. Because the relationship arose in North Dakota, North Dakota rules should be applied to regulate that relationship.

The North Dakota Supreme Court has noted the "strong territorial nature of no-fault law." *American Family*, 504 N.W.2d. at 309–10. In *American Family*, as here, Minnesota and North Dakota each had interest in an insured, an insurer, a vehicle, and an insurance policy. *Id.* at 308–09. But in *American Family*, the accident happened in Minnesota. *Id.* at 307. The North Dakota no-fault carrier sought subrogation from the Minnesota liability insurer by asserting North Dakota law. *Id.* at 308. The court, concluding that Minnesota had the "deeper interest in application of no-fault principles for an accident occurring in that state," applied Minnesota rules of law to the subrogation action. *Id.* at 309, 311. Implicitly, the North Dakota court has stated that, in the converse situation, it will have the "deeper interest."

This case is that converse situation—a subrogation action arising from an accident in North Dakota, with all other facts evenly balanced between Minnesota and North Dakota. And we agree that North Dakota properly has the greater governmental interest. Minnesota does not have a significant governmental interest in applying Minnesota law to a subrogation action when the relationship between the insurers arose in North Dakota.

We recognize that, in *Principal*, this court applied the Minnesota rule in a subrogation action between two automobile insurers, despite the fact that the accident occurred in Illinois. 472 N.W.2d at 339, 342. But in that case, both insureds were Minnesota residents and were insured under automobile policies written in Minnesota. *Id.* at 339. The driver of the other car involved in the accident was uninsured. *Id.* In *Principal* it seemed natural that Minnesota law should govern the relationship between the Minnesota insurers of the Minnesota residents who were traveling in the same car. It was fortuitous that the accident in *Principal* happened in Illinois while Minnesotans were taking an interstate trip together. But here, it was not fortuitous that North Dakota was the site of an accident involving a North Dakota resident who was insured under a North Dakota policy.

## DECISION

The district court erred by concluding that Minnesota law governed a no-fault insurer's right to subrogation against a North Dakota liability insurer. The relationship between the two insurers arose at the time of the accident in North Dakota; consequently, North Dakota law governs.

**Reversed.**