Albert WILLE, et al., Respondents,

v.

**FARM BUREAU MUTUAL
INSURANCE COMPANY,**
Appellant.

No. C7–88–1096.

Court of Appeals of Minnesota.

Dec. 13, 1988.

Richard A. Williams, Jr., Hvass, Weisman & King, Chartered Minneapolis, for respondents.

Kenneth R. White, Farrish, Johnson & Maschka, Mankato, for appellant.

Heard, considered and decided by SCHUMACHER, P.J., FOLEY and HUSPENI, JJ.

## OPINION

SCHUMACHER, Judge.

Respondent Albert Wille brought a declaratory judgment action seeking to stack underinsured benefits of separate insurance policies on his two vehicles. Farm Bureau Insurance Co., appellant, brought a summary judgment motion. The trial court denied Farm Bureau's motion and granted summary judgment for Wille. Farm Bureau appeals.

## FACTS

On December 24, 1984, in Janesville, Minnesota, respondent Albert Wille was struck by a vehicle owned by Rick Scholl and driven by Raymond Scholl. Both the Scholls were residents of the State of Minnesota. Wille was visiting his daughter at the time. He was getting into his automobile when he was struck and sustained personal injuries as a result.

Wille was a resident of Williamsburg, Iowa and also worked in Iowa. He owned two vehicles, a 1979 Ford and a 1979¾ ton pick-up truck that were registered in Iowa and principally garaged in Iowa. Each vehicle was insured through a separate policy by appellant Farm Bureau Mutual Insurance Company ("Farm Bureau"). Each policy has underinsured motorist coverage limits of $25,000 per person and $50,000 per accident. The policies contained language prohibiting stacking of benefits.

Compensation is available to Wille from various insurance policies. Rick Scholl, owner of the vehicle that struck Wille, and Raymond Scholl, the driver of the vehicle, both have automobile insurance with policy limits of $25,000 for liability. The trial court found that Wille has received thus far the $25,000 underinsured limits on the policy covering his 1979 Ford and the $25,000 liability limits on the Raymond Scholl vehicle.

Wille brought an action against Farm Bureau in December, 1986 seeking a declaratory judgment permitting him to recover the $25,000 underinsured benefits available under the policy on his truck. Wille alleged that his damages were greater than the sums he has already received. In February 1988, Farm Bureau brought a summary judgment motion on Wille's complaint. On April 7, 1988 the trial court granted Wille summary judgment.

## ISSUE

Does Iowa law or Minnesota law apply to the enforcement of anti-stacking provisions in Wille's insurance policy with Farm Bureau?

## ANALYSIS

When reviewing an award for summary judgment, this court must determine whether there are any genuine issues of material fact and whether appellant is entitled to summary judgment as a matter of law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). In the present case, the parties do not dispute the facts. This court is not bound by the trial court's conclusions of law. *A.J. Chromy Construction Co. v. Commercial Mechanical Services, Inc.*, 260 N.W.2d 579, 582 (Minn.1977).

This is a choice-of-law case. Iowa law would enforce the anti-stacking provisions of Farm Bureau's policy issued to Wille. Minnesota law at the time of the accident would deny enforcement of those provisions. *See Hague v. Allstate Insurance Co.*, 289 N.W.2d 43, 49 (Minn.1978) *aff'd on rehearing*, 289 N.W.2d at 50 (Minn.1979) *cert. granted* 444 U.S. 1070, 100 S.Ct. 1012, 62 L.Ed.2d 750 (1980) *aff'd* 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981) *reh'g denied* 450 U.S. 971, 101 S.Ct. 1494, 67 L.Ed.2d 623 (1981).

■ The first step in analyzing this choice-of-law question is to determine whether the forum state and the alternative state have sufficient contacts to pass constitutional due process demands. Neither party charges that contacts with either Minnesota or Iowa are so insufficient as to forbid application of that state's law to the case. Minnesota is the site of the accident, the resident state of the other vehicle involved and a state in which Farm Bureau is licensed to do business. Similar contacts were held sufficient in *Hime v. State Farm Fire & Casualty Co.*, 284 N.W.2d 829, 832 (Minn.1979), *cert. denied* 444 U.S. 1032, 100 S.Ct. 703, 62 L.Ed.2d 668 (1980).

The second step requires the court to examine five factors, namely:

1) predictability of results;
2) maintenance of interstate and international order;
3) simplification of the judicial task;
4) advancement of the forum's governmental interest;
5) application of the better rule of law

*Hime*, 284 N.W.2d at 833 (quoting *Milkovich v. Saari*, 295 Minn. 155, 203 N.W.2d 408, 412 (1973)).

### 1.) Predictability of results

The supreme court has applied this factor "primarily to consensual transactions where the parties desire advance notice of which state law will govern in future disputes." *Hime*, 284 N.W.2d at 833. The policy in the present case does not require that Iowa's law be used in interpreting the policy's provisions.

■ An automobile insurer has no reasonable expectation that the law of the issuing state will govern the policy.

When an insurance company doing business in a number of states writes a policy on an automobile, the company knows the automobile is a movable item which will be driven from state to state. The company, therefore, accepts the risk that

the insured may be subject to liability not only in the state where the policy is written, but also in states other than where the policy is written, and that in many instances those states will apply their own law to the situation.

*Hague*, 289 N.W.2d at 50.

### 2.) Maintenance of interstate and international order

This factor requires sufficient contacts between the state whose law is applied and the transaction. *Hague*, 289 N.W.2d at 48. The accident occurred in Minnesota with a Minnesota resident and a vehicle licensed in Minnesota. Farm Bureau is licensed to do business in Minnesota. These contacts are sufficient to warrant application of Minnesota law. *See Hime*, 284 N.W.2d at 833.

### 3.) Simplification of the judicial task

There is no difficulty in applying the law of either state as both parties agree that in 1984, Minnesota law would permit stacking and Iowa law would not.

### 4.) Advancement of the forum's governmental interest

"Minnesota's governmental interest will most clearly be advanced by application of Minnesota law." *Hague*, 289 N.W.2d at 49. Application of Minnesota law will have little effect on the advancement of a significant state interest.

### 5.) Better Rule of Law

We hold that the better rule is Minnesota law. "We believe that it is preferable to compensate victims of accidents to the full extent of their injuries * * *." *Hague*, 289 N.W.2d at 49.

■ However, Farm Bureau argues that statutory amendments subsequent to the accident should determine this court's analysis and in support of its position cites *Stenzel v. State Farm Mutual Automobile Insurance Co.*, 379 N.W.2d 674 (Minn. Ct.App.1986) *pet for rev. denied* (Minn. 1986). The Minnesota legislature amended

the underinsured statute in 1985 to prohibit stacking of underinsured benefits. 1985 Minn.Laws, 1st Spec.Sess. ch. 10 § 68. This provision was expressly made effective October 1, 1985 for:

all insurance policies providing benefits for injuries arising out of the maintenance or use of a motor vehicle or motorcycle that are executed, issued, issued for delivery, delivered, continued, or renewed in this state after September 30, 1985.

1985 Minn.Laws, 1st Spec.Sess. ch. 10, § 125.

Farm Bureau's argument is similar to that of appellant in *AMCO Insurance Co. v. Lang*, 420 N.W.2d 895 (Minn.1988). In *AMCO*, Maxine O'Laughlin was killed in an auto accident on October 24, 1985 in Minnesota. Maxine and her husband Thomas were residents of Minnesota. The O'Laughlins insured their two vehicles through AMCO Insurance Co., and had policies that covered a one-year period from November 5, 1984 to November 5, 1985. AMCO refused to stack the underinsured benefits available under the two policies relying on the anti-stacking language contained in the policies. AMCO claimed that the October 1, 1985 amendments applied to the policies and therefore the anti-stacking amendments were enforceable. AMCO, an Iowa corporation, brought a declaratory judgment action in federal district court based on diversity jurisdiction. The federal court certified the question of the enforceability of the anti-stacking provisions to the Minnesota Supreme Court.

The supreme court refused to apply the amendments in AMCO's case. Although *AMCO* was not a choice-of-law case, we find the court's reasoning in *AMCO* dispositive of Farm Bureau's argument in the present case.

Like Farm Bureau, *AMCO* contended that:

once the legislature's expression of public policy went into effect AMCO was no longer precluded from enforcing the anti-stacking * * * provisions of its policy.

*AMCO*, 420 N.W.2d at 900.

In its opinion, the supreme court recalled its earlier ruling that first party coverages

follow the person, not the vehicle and therefore stacking was permitted. *See Van Tassel v. Horace Mann Insurance Company*, 296 Minn. 181, 207 N.W.2d 348 (1973). The court also pointed out that the No–Fault Act as originally written was silent on the stacking issue. However, the court continued:

Whatever may have been the legislature's intent when it enacted the No–Fault Act in 1974 and during the intervening years, these 1985 amendments declare a public policy plainly at variance with that articulated in the case law. *Does this new statement of public policy affect the enforceability of anti-stacking and reduction of benefits clauses in policies issued prior to the effective date of these amendments? We think not.*

*AMCO*, 420 N.W.2d at 897–898. (emphasis added)

The court further discussed the effect of an apparent change in public policy on insurance contracts written prior to the policy change:

[T]his court had declared that anti-stacking provisions and reduction-of-benefits provisions were void as against public policy when the insured had paid separate premiums for first party coverages with respect to more than one vehicle. * * * It is well established that contract provisions which conflict with statutory law 'or the well clarified and clearly expounded rules set forth by judicial decision' will not be enforced. (citations omitted) And a subsequent change in public policy does not validate insurance contract provisions which violated public policy and were, therefore, invalid when the insurance policy was issued. (citations omitted).

*AMCO*, 420 N.W.2d at 900.

We believe the court in *AMCO* declared that a subsequent public policy change does not affect the enforceability of insurance policy provisions. Therefore, we cannot agree that in a choice-of-law analysis, a change in Minnesota's public policy re-

quires enforcement of a provision that violated public policy when the insurance contract was issued.

DECISION

Affirmed.